In accordance with the directives of the North Carolina Court of Appeals, the Full Commission find as fact and conclude as matters of law the following, which were entered into by the parties in an executed Pre-Trial Agreement, as:
 STIPULATIONS
1. The parties are subject to and bound by the provisions of the North Carolina Workers Compensation Act.
2. The employer-employee relationship existed between defendant-employer and plaintiff employee at all relevant times herein.
3. CNA Insurance Companies was providing workers compensation insurance coverage at the time of the accident herein.
4. Plaintiffs average weekly wage will be determined pursuant to the Form 22 submitted by defendant-employer.
5. Mid-South Management Company, d/b/a Jefferson Times, Inc., is defendant-employer in this matter.
6. Plaintiff sustained an injury by accident while in the course and scope of her employment with defendant-employer on June 21, 1993.
 ***********
In accordance with the directives of the North Carolina Court of Appeals and based upon all of the competent, credible, and convincing evidence adduced at the hearing before the Deputy Commissioner and from the record, the Full Commission makes the following additional:
 FINDINGS OF FACT
1. At the time of hearing before the Deputy Commissioner, plaintiff was 43 years old. She had completed Wilkes Community College with a degree in File Clerk Management and Typing.
2. Plaintiff was employed by defendant-employer in February, 1990, as an inserter. In 1992, plaintiff was promoted to the position of Circulation Manager.
3. On June 21, 1993, plaintiff was unloading boxes of inserts from a truck. She had taken a number of boxes off the truck and had placed them onto a cart. As she began to push the cart into the building, it became stuck. Plaintiff pushed hard on the cart to get it moving again. While doing so, she felt a pull in her lower back. She reported the incident to her supervisor and was sent to see a doctor.
4. Plaintiff was initially seen and treated by Dr. Philip Yount on June 21, 1993. Dr. Yount noted that plaintiff had a normal neurological exam and diagnosed her condition as a lumbosacral strain with spasm. Dr. Yount told plaintiff to take the next two days off for her back. Plaintiff did not take the days off but instead continued to work.
5. Plaintiff continued to have pain in her lower back, and Dr. Yount took her out of work for two weeks. Plaintiff, thereafter, resigned from her position with defendant-employer on or about July 9, 1993.
6. Plaintiff was paid her regular salary for the period of time that she was taken out of work by Dr. Yount, that being two weeks and two days.
7. Plaintiff has not returned to work since her resignation of July 9, 1993, for defendant or for any other employer, although defendant-employer has offered plaintiff several different suitable positions.
8. Dr. Yount continued to treat plaintiffs condition but could not understand why plaintiff was getting worse instead of better. He felt that, normally, a person with the minor injury that plaintiff had sustained would have recovered by September, 1993. Plaintiffs condition continued to worsen, although he had treated her with medication and therapy. Dr. Yount sent plaintiff to see Dr. Michael Nicks of Hickory Orthopedic Center.
9. Dr. Nicks initially saw plaintiff on September 17, 1993. Dr. Nicks diagnosed plaintiffs condition as lumbar strain and recommended that she continue with the rehabilitation program recommended by Dr. Yount.
10. Plaintiff was seen by Dr. Andrea Stutesman of Rehabilitation Specialists on January 21, 1994, following a functional capacity evaluation (FCE). The FCE showed that plaintiff could carry up to twenty-seven pounds on an occasional basis. Dr. Stutesman recommended that plaintiff could perform a seated job which had some walking. Dr. Nicks also imposed the restrictions on lifting, bending and twisting. Defendant-employer offered plaintiff a suitable position that would have complied with the restrictions that had been given by her treating physicians.
11. Dr. Stutesman also diagnosed plaintiff with piriformis syndrome, which involves spasticity of a deep pelvic muscle which binds and irritates the sciatic nerve resulting in lower back pain. Dr. Stutesman directly related plaintiffs problems with the piriformis muscle to the work-related injury, although in retrospect, Dr. Stutesman stated that the severity of the syndrome was probably due to the fact that plaintiff also had multiple sclerosis.
12. On May 31, 1994, plaintiff underwent piriformis release surgery performed by Dr. Scott McCloskey. The surgery was successful and plaintiffs deep buttock and hip pain was somewhat relieved; however, due to plaintiffs multiple sclerosis condition, she continued to experience a degree of spasticity. On January 7, 1997, Dr. Stutesman stated that plaintiff had reached maximum medical improvement as far as her back injury, and she rated plaintiff with a 5% permanent partial disability to her back. The rating was based upon the work injury, the SI joint dysfunction and the piriformis injury which Dr. Stutesman directly related to the work injury.
13. Plaintiffs condition still continued to worsen although she was out of work, and Dr. Yount still could not determine why. Dr. Yount sent plaintiff to Dr. Douglas Jeffery of the Department of Neurology at Bowman Gray School of Medicine for an evaluation on December 23, 1994.
14. Dr. Jeffery diagnosed plaintiff with having multiple sclerosis, and he began to treat her for her condition. Dr. Jeffery also noted that plaintiff was also suffering from chronic back pain. Dr. Jeffery thought that plaintiffs chronic back pain was directly associated with her injury of June 21, 1993.
15. Dr. Jeffery is a nationally recognized expert in the area of evaluation and treatment of multiple sclerosis. Dr. Jeffery was of the opinion that plaintiffs injury of June 21, 1993 did not directly aggravate, exacerbate or worsen plaintiffs multiple sclerosis. However, he felt that the stress caused by her pain and the stress associated with her injury more than likely did aggravate and exacerbate plaintiffs multiple sclerosis. Dr. Jeffery could not credibly or convincingly tell to what, if any, degree the stress may have aggravated or exacerbated her multiple sclerosis.
16. Dr. Jeffery indicated that, although there is not any scientific data of how stress affects multiple sclerosis, it is common knowledge within the community of doctors who treat multiple sclerosis on a daily basis that stress does, in fact, have a direct impact on the course of multiple sclerosis patients and their care.
17. Dr. Jeffery indicated that he could not determine when plaintiffs disability due to her multiple sclerosis started, as she was working up until her injury of June 21, 1993. He noted that plaintiff had had multiple sclerosis for approximately 20 years prior to her injury.
18. All of plaintiffs treating physicians agree that plaintiff is presently permanently and totally disabled. They are unable, however, to determine whether her injury of June 21, 1993 or whether her multiple sclerosis is the cause of her disability. This opinion, or lack thereof, is accepted as credible and convincing.
19. Dr. Yount indicated that plaintiffs June 21, 1993, injury was one which normally would heal in a 6 to 8 week period with conservative treatment.
20. Plaintiffs average weekly wage at the time of her injury was $290.45, yielding a compensation rate of $193.64.
21. Plaintiffs disability began on June 22, 1993 and continued until July 9, 1993, for the two weeks and two days, thereafter, that Dr. Yount took her out of work. Plaintiff voluntarily removed herself from the workplace following that period of time, for which she was paid full wage replacement, and despite the availability of suitable work for her with defendant-employer.
22. Plaintiff was subsequently disabled as a result of her pirifomis release surgery on 31 May 1994 and continued to be disabled until 7 January 1997 when she reached maximum medical improvement to her lower back with a 5% permanent partial disability rating.
 ***********
In accordance with the directives of the North Carolina Court of Appeals and based upon the foregoing stipulations and findings of fact, the Full Commission enters the following:
 CONCLUSIONS OF LAW
1. On June 21, 1993, plaintiff sustained an admitted injury by accident arising out of and in the course of her employment with defendant-employer. N.C. Gen. Stat. 97-2(6).
2. Plaintiffs average weekly wage was $290.45 per week, yielding a compensation rate of $193.64. N.C. Gen. Stat. 97-2(5).
3. As a result of the injury by accident of June 21, 1993, plaintiff is entitled to temporary total disability compensation in the amount of $193.64 per week for the period of time from June 22, 1993 through July 9, 1993, for which she has already been paid full wage replacement. N.C. Gen. Stat. 97-29.
4. As a result of the injury by accident of June 21, 1993, plaintiffs piriformis condition was significantly aggravated and resulted in piriformis muscle release surgery on 31 May 1994. As a result of the injury, plaintiff sustained a 5% permanent partial disability to her lower back. Accordingly plaintiff is entitled to compensation in the amount of $193.64 per week for a period of 15 weeks. N.C. Gen. Stat.97-31(23).
5. Plaintiff is entitled to temporary total disability compensation in the amount of $193.64 per week from the 31 May 1994 date of her piriformis release surgery through 7 January 1997 when she reached maximum medical improvement to her lower back. N.C. Gen. Stat. 97-29.
6. Plaintiff is entitled to the payment of the medical expenses incurred for the treatment of the injuries she sustained on June 21, 1993, and for any further treatment that tends to cure, give relief and/or lessen plaintiffs period of disability, subject to the limitations contained in the Act. N.C. Gen. Stat. 97-25; 97-25.1.
 ***********
In accordance with the directives of the North Carolina Court of Appeals and considering the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendants shall pay for all medical expenses incurred or to be incurred by plaintiff as a result of her compensable injury and resulting chronic back pain when bills for same have been submitted to and approved by the Industrial Commission, for so long as such evaluations, treatments and examinations may reasonably by required to effect a cure, give relief and/or lessen plaintiffs period of disability, within the limitations contained in N.C. Gen. Stat. 97-25.1.
2. Defendants shall pay plaintiff temporary total disability compensation in the amount of $193.64 per week beginning on 31 May 1994 and continuing through 7 January 1997. Defendants shall pay this amount in a lump sum, subject to attorneys fees approved below.
3. Subject to attorneys fees approved below, defendants shall pay plaintiff a lump sum in the amount of $2,904.60 representing a 5% permanent partial disability to her back, pursuant to the June 7, 1997 rating provided by Dr. Stutesman.
4. Plaintiffs counsel is entitled to a reasonable attorneys fee of 25% of plaintiffs recovery in Paragraphs 2 and 3 above. The fee shall be deducted from the lump sum awards and paid directly to plaintiffs counsel.
5. Defendants shall pay the costs of this action.
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
S/_______________ CHRISTOPHER SCOTT COMMISSIONER